# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| OTTRIEZ SANDS, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 16 C 8080 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 12, 2016, pro se Petitioner Ottriez Sands filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 bringing nine separate claims supporting his motion. After Respondent filed its response brief, Sands moved for an extension of time to file his reply brief and also filed a motion to withdraw claims six, eight, and nine that the Court granted on February 9, 2017. Sands' § 2255 motion is now fully briefed. For the following reasons, the Court denies Sands' motion and declines to certify any issues for appeal. 28 U.S.C. §§ 2253(c)(2), 2255.

## PROCEDURAL BACKGROUND

On April 10, 2013, a grand jury returned an indictment charging Sands with one count of being a felon in possession of a firearm in or affecting commerce in violation of 18 U.S.C. § 922(g)(1). On October 17 and November 6, 2013, the Court held a suppression hearing on Sands' motion to suppress evidence recovered from the search of his vehicle and to quash his arrest, and on November 18, 2013, the Court denied Sands' motion to suppress. On April 28, 2014, Sands proceeded to a jury trial, and, on April 29, 2014, the jury returned a guilty verdict.

Sands then filed a motion for acquittal or, in the alternative, for a new trial that the Court denied on June 18, 2014. On October 22, 2014, the Court sentenced Sands to 189 months in prison under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On November 29, 2014, Sands filed a notice of appeal. On appeal, Sands challenged the Court's suppression ruling and asserted that the Court improperly restricted defense counsel's closing argument. On November 4, 2015, the Seventh Circuit affirmed Sands' conviction. *See United States v. Sands,* 815 F.3d 1057 (7th Cir. 2015).

## FACTUAL BACKGROUND

Chicago Police Officer Perry Williams received information from a registered confidential informant that an individual whom the informant knew personally was selling narcotics out of a gold-toned Toyota Camry in the South Shore neighborhood of Chicago. Based on this tip, Officer Williams drove to the area of 71st Street and Paxton Avenue and saw Sands seated in the driver's seat of a gold-toned Toyota Camry on February 3, 2012. Thereafter, Officer Williams parked his car on 71st Street to conduct surveillance. While Officer Williams was conducting surveillance, Chicago Police Officers Kevin Kilroy, Matthew Darling, and Nathan Gadzik were nearby in a second vehicle that was out of sight of Sands' gold-toned Camry.

About fifteen minutes after arriving at 71st and Paxton, Officer Williams saw Sands engage in a hand-to-hand transaction through the driver's side window of the Camry with another individual, later identified by the Chicago Police as Katon Hunter. Based on his experience and training, Officer Williams believed that he had witnessed a narcotics transaction; informed Officers Kilroy, Darling, and Gadzik that a narcotics transaction had occurred; and

2

then directed the officers to arrest Sands. After receiving this information, Officers Kilroy, Darling, and Gadzik drove to 71st and Paxton, at which time Officer Kilroy saw Sands sitting in the driver's seat of the Camry. Officers Darling and Kilroy saw Hunter get out of the Camry from the front passenger seat and run into a nearby Family Dollar store. Thereafter, Office Gadzik pursued Hunter into the Family Dollar store and Officer Kilroy approached the Camry.

Officer Kilroy saw Sands through the Camry's windshield. At that time, Sands was holding a firearm in his right hand and then moved the firearm to the car's open center console. Officer Kilroy then drew his service weapon and ordered Sands to get out of the Camry. Sands did not immediately comply, and thus Officer Kilroy opened the car door and removed Sands from the Camry. Next, Officer Kilroy patted Sands down to ensure that he had no weapons. While another officer detained Sands, Officer Kilroy entered the Camry to locate Sands' firearm. When he opened the center console it appeared empty, but there was a false floor in the console where Officer Kilroy found Sands' firearm, which contained live ammunition, and approximately 10-15 bags of marijuana.

**LEGAL STANDARD**

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). In other words, to obtain relief under § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Swanson v. United States,* 692 F.3d 708, 714 (7th Cir.

3

2012) (citation omitted). Accordingly, a § 2255 motion is not a substitute for a direct appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under § 2255 "will not be allowed to do service for an appeal"). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice. *See Brown v. Brown,* 847 F.3d 502, 518 (7th Cir. 2017). Because Sixth Amendment claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Gaylord v. United States,* 829 F.3d 500, 506 (7th Cir. 2016).

## ANALYSIS

**I.  Ineffective Assistance of Trial Counsel Claims**

Construing his pro se § 2255 motion and filings liberally, *see Beal v. Beller,* 847 F.3d 897, 902 (7th Cir. 2017), Sands argues that his trial counsel provided constitutionally ineffective assistance of counsel. To establish constitutionally ineffective assistance of trial counsel in violation of the Sixth Amendment, Sands must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of

review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted); *see also Delatorre, v. United States,* 847 F.3d 837, 845 (7th Cir. 2017) (courts apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead Sands must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Carter v. Butts,* 760 F.3d 631, 635 (7th Cir. 2014) (citation omitted).

### A. Failure to Object to Hearsay Testimony at Suppression Hearing

Examining his pro se filings liberally, Sands first argues that his trial counsel's failure to object to Officer Williams' suppression hearing hearsay testimony about the confidential informant's tip amounted to ineffective assistance of counsel. In particular, Sands maintains that counsel's failure to object based on hearsay fell below an objective standard of reasonableness and that had counsel objected to this hearsay testimony, the result of suppression hearing would have been different. Sands cannot establish that his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" nor can he establish prejudice because it is well-established that hearsay is admissible at suppression hearings. *See United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("At a suppression hearing the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). Because hearsay is admissible at suppression

5

hearings, Sands' first argument is without merit. *See Warren v. Baenen,* 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

**B.    Failure to Raise Confrontation Clause Rights**

Next, Sands asserts that his trial counsel was constitutionally ineffective for failing to raise his Sixth Amendment right to confront the confidential informant at his 2013 suppression hearing or his 2014 trial and that his counsel erred by failing to request a disclosure of the confidential informant's identity. First, the Sixth Amendment right to confrontation is a trial right that does not apply to the same extent at a pretrial suppression hearing. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion) ("The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.") (emphasis in original); *Ebert v. Gaetz,* 610 F.3d 404, 414 (7th Cir. 2010) ("Confrontation Clause was not implicated" at "suppression hearing"); *see, e.g., United States v. Marzook,* 435 F. Supp. 2d 708, 748 (N.D. Ill. 2006).

Second, the "Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him, and it includes the right to cross-examine those witnesses." *United States v. Rivas,* 831 F.3d 931, 934 (7th Cir. 2016). In this matter, the confidential informant did not testify at Sands' trial nor did the government present evidence about the informant or the information he provided. In other words, there was no testimonial evidence for Sands to confront. *See United States v. Amaya,* 828 F.3d 518, 529-30 (7th Cir. 2016); *see, e.g., Mikels v. Evans,* No. 06 C 1747, 2009 WL 87462, at *5 (N.D. Ill. Jan. 13, 2009) (St. Eve, J.); *cf. Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016) ("The Confrontation Clause

prohibits an out-of-court statement only if it is admitted for its truth.") (per curiam). Under the circumstances, the confrontation clause was not triggered, therefore, any such ineffective assistance of counsel claim based on this argument is without merit. *See Peterson v. Douma,* 751 F.3d 524, 533 (7th Cir. 2014) ("Sixth Amendment does not require counsel" to "press meritless arguments before a court," and "it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere.") (citation omitted).

Further, Sands contends that his trial counsel erred by failing to move for the disclosure of the government's confidential informant. "It is well established that the government may withhold the identity of a confidential informant in furtherance of the public interest in law enforcement unless the identity is relevant or helpful to the defense or essential to a fair determination of cause." *United States v. Thomas*, 835 F.3d 730, 734-35 (7th Cir. 2016) (quoting *Roviaro v. United States,* 353 U.S. 53, 59-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). Under this standard, the role of the confidential informant is an important factor when courts determine whether the informant's identity must be disclosed. *See United States v. McDowell,* 687 F.3d 904, 911 (7th Cir. 2012). Specifically, where the informant is a mere "tipster" whose only role was to provide the police with relevant background information – as opposed to being an eyewitness or participant in the criminal activity – disclosure is not required. *See United States v. Shaw,* 824 F.3d 624, 629 (7th Cir. 2016); *McDowell,* 687 F.3d at 911. Here, the confidential informant was not an eyewitness to the February 3, 2012 events underlying Sands' indictment nor did he participate in the underlying criminal conduct. *See Shaw,* 824 F.3d at 629; *McDowell,* 687 F.3d at 911. As such, the confidential informant in this matter was a mere tipster, and therefore, counsel's performance in this respect falls within the wide range of

7

reasonable professional assistance. *See Strickland,* 466 U.S. at 689. In addition, even if the Court had granted a *Roviaro* motion, Sands does not explain how it would have benefitted him. *See United States v. Graf,* 827 F.3d 581, 585 (7th Cir. 2016). As such, the Court therefore denies this aspect of Sands' § 2255 motion.

### C. Failure to Investigate Credibility of Chicago Police Officers

Sands further posits that his trial counsel was constitutionally ineffective because counsel failed to sufficiently investigate the credibility of the arresting officers and police records, especially in light of the Chicago Police Department's "long dark history of violating citizens' constitutional rights." More specifically, Sands argues that a number of federal agents, including an Assistant United States Attorney and ATF agent, interviewed the arresting officers, at which time the arresting officers gave contradictory and conflicting statements.

Despite Sands' arguments to the contrary, the record reflects that the government provided Sands' counsel with the memoranda of the officer interviews and police reports. Equally important, Sands' attorney was abundantly aware of the contradictory statements made in these reports because counsel pointed out these inconsistent statements at the suppression hearing. (R. 94, 10/17/13 Tr., at 85-88.) As to Officer Williams, counsel questioned him about the supplemental police report to uncover any inconsistencies in the officers' versions of the events leading up to Sands' arrest. (*Id.* at 78-79.) Moreover, counsel argued in the legal memorandum in support of the suppression motion that the arresting officers told "different versions" of what took place the day of Sands' arrest. (R. 25, Reply Brief, at 2-3.)

Furthermore, at trial, Sands' counsel cross-examined Officer Kilroy regarding the inconsistent statements he made to the Assistant United States Attorney and a federal agent in

8

July 2012. (R. 119, 04/28/14 Tr., at 41-42.) Sands' trial counsel also impeached Officer Kilroy regarding information in the original and supplemental arrest reports. (*Id.* at 45.) In addition, trial counsel questioned Officer Darling about his meetings with government officials and used the memorandum of the February 19, 2013 meeting to refresh Officer Darling's recollection. (*Id*. at 75-77.) Counsel additionally questioned Officer Gadzik about his January 2013 interview with the government pointing to Officer Gadzik's inconsistent statements memorialized in that meeting's memorandum. (*Id*. at 164-66.)

In sum, counsel's examination of the arresting officers at the suppression hearing and jury trial belies Sands' argument that his trial attorney did not sufficiently investigate the police reports and governmental records. Based on trial counsel's performance at the suppression hearing and jury trial, the Court would be hard-pressed to concluded that – by impeaching the arresting officers with the government memoranda and the police reports – counsel's conduct "fell below an objective standard of reasonableness" amounting "incompetence under 'prevailing professional norms.'" *Delatorre*, 847 F.3d at 845 (citation omitted). Last, Sands' comments about the Chicago Police Department's "dark history" merely adds speculation to his unsubstantiated claims. The Court thus denies Sands' § 2255 motion in this respect.

### D. Failure to Challenge Destruction of Exculpatory Evidence

Sands' next argument concerns the destruction of the gold-toned Toyota Camry. To clarify, on June 7, 2013, the Court granted Sands' motion to inspect the Toyota Camry. In September 2013, counsel informed the Court that the Chicago Department of Streets and Sanitation destroyed the Camry in June 2012. Trial counsel maintained that based on the photographs taken of the Camry prior to its destruction, Chicago police officers did not follow

9

the standard policies and procedures for tagging the Camry as evidence. Accordingly, counsel reserved Sands' right to file a motion to dismiss pursuant to *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), after further investigation. Counsel, however, never filed a motion per *Trombetta*. *See also Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Sands now argues that counsel failure's to file a motion concerning the destruction of the Camry amounts to ineffective assistance of counsel.

As the Seventh Circuit explains, *Youngblood* and *Trombetta* "made clear that the bad-faith destruction of potentially exculpatory evidence – or destruction of evidence with apparent exculpatory value, even without bad faith – violate[s] a criminal defendant's right to due process of law." *Armstrong v. Daily,* 786 F.3d 529, 556 (7th Cir. 2015). In other words, a "police officer's duty to preserve evidence applies when the officer either knows the evidence is exculpatory or destroys the evidence in bad faith." *Hart v. Mannina,* 798 F.3d 578, 589 (7th Cir. 2015).

In support of this claim, Sands does not sufficiently explain how the Camry had any apparent exculpatory value before the officers destroyed it, especially because the mere possibility that the Camry could have been exculpatory does not satisfy the standard under *Trombetta*. *See United States v. Bell,* 819 F.3d 310, 318 (7th Cir. 2016); *McCarthy v. Pollard,* 656 F.3d 478, 485-86 (7th Cir. 2011). Moreover, under *Trombetta*, "the evidence at issue must not only have an apparent exculpatory value but be of such a nature that the defendant cannot obtain comparable evidence by other means." *Bell*, 819 F.3d at 318. Based on the record before the Court, Sands' arguments fall short of this rigorous standard in relation to the destroyed Toyota Camry, therefore, counsel's decision not to pursue this avenue was sound trial strategy.

*See Strickland*, 466 U.S. at 689.

Likewise, Sands has failed to highlight evidence supporting a reasonable inference that the pertinent government actors destroyed the Camry in bad faith, which requires proof of an "official animus" or a "conscious effort to suppress exculpatory evidence." *See Bell,* 819 F.3d at 318 (citation omitted); *see also United States v. Fletcher*, 634 F.3d 395, 408 (7th Cir. 2011) ("bad faith requires more than carelessness, it requires a 'conscious effort to suppress exculpatory evidence.'") (citation omitted). Again, based on the evidence in the record, counsel's decision not to bring a *Trombetta* motion in relation to the destroyed Camry was objectively reasonable under *Strickland*.

Nonetheless, Sands also argues that trial counsel was constitutionally ineffective for failing to obtain a comparable vehicle to show that Officer Kilroy could not see the firearm in his lap through the Camry's windshield. In response to this argument, Respondent has provided evidence that trial counsel, along with a court-appointed investigator, attempted to obtain a similar vehicle; obtained a similar vehicle; determined if it was possible for Officer Kilroy to view the gun from the windshield; and then reported their findings to Sands. (R. 8-1, Graham Aff. ¶¶ 4, 5, 6.) In his reply brief, although Sands takes issue with counsel's affidavit regarding testing a similar vehicle, he offers no evidence to rebut counsel's affidavit except for photographs of the Camry that counsel attached to the legal memorandum in support of Sands' suppression motion, which fail to rebut any of counsel's averments. *See Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). Under these circumstances, counsel's performance in relation to the destruction of the Camry did not amount to "incompetence under 'prevailing professional norms.'" *Delatorre*, 847 F.3d at 845.

### E. Failure to Challenge Armed Career Criminal Designation

In further support of his ineffective assistance of trial counsel claim, Sands argues that counsel erred by not challenging his Armed Career Criminal status ("ACCA"). *See* 18 U.S.C. § 924(e).[1] Specifically, Sands contends counsel failed to effectively challenge that his prior felony armed robbery convictions amounted to crimes of violence under the ACCA. As the sentencing transcript shows, however, trial counsel did object to Sands' prior felony convictions and the Court gave Sands the opportunity to comment about the findings in his Presentence Investigation Report, including the Guideline calculation. (R. 121, Sent. Tr., at 5-6, 9-11, *see also* R. 97, Def.'s Sentencing Mem. at 5-6.) In any event, even if counsel had made more or other arguments in relation to Sands' prior felony convictions, any such arguments would not have altered the outcome at sentencing, and thus Sands cannot establish prejudice under the *Strickland*.

To explain, Sands was charged with armed robbery in four separate, but consecutive Circuit Court of Cook County indictments, namely, 00 CR 24165, 00 CR 24166, 00 CR 24167, and 00 CR 24168, which constituted four distinct episodes of armed robberies occurring on July 11, 2000, July 20, 2000, September 8, 2000, and September 9, 2000. Approximately two years later, on June 18, 2002, Sanders pleaded guilty to the four indictments and was sentenced to a total of 18 years incarceration in the Illinois Department of Corrections. Moreover, it is well-established under the Seventh Circuit law that a conviction under the Illinois robbery statute, 720 ILCS 5/18, falls under the ACCA's elements clause. *See United States v. Carter,* 910 F.2d 1524,

---

[1] The Court did not sentence Sands under the residual clause of the ACCA, and thus his arguments are not based on *Johnson v. United States,* 135 S.Ct. 2551 (2015), made retroactive on collateral review by *Welch v. United States,* 136 S. Ct. 1257 (2016).

1532 (7th Cir. 1990) ("It is beyond dispute that under Illinois law, robbery is an offense that has as an element the use or threatened use of force."); *United States v. Dickerson*, 901 F.2d 579, 584 (7th Cir. 1990) ("the Illinois robbery statute in its own terms includes the elements of either 'use of force or ... threatening the imminent use of force,' that clearly come within the scope of 18 U.S.C. § 924(e)(2)(B)."); *Sach v. United States,* No. 16 C 5530, 2017 WL 987365, at *5 (N.D. Ill. Mar. 14, 2017) ("Because of the plain language of the statute, the Seventh Circuit has long held that a conviction under the Illinois robbery statute falls under the elements clause of the ACCA."); *see, e.g., United States v. Moore*, ___ F.3d ___, 2017 WL 1018345, at *1 (7th Cir. Mar. 15, 2017). In sum, based on this well-established controlling legal authority, counsel's conduct did not prejudice Sands because he cannot show the reasonable likelihood that the outcome of his sentencing would have been different. *See Strickland,* 466 U.S. at 694; *Delatorre,* 847 F.3d at 845. The Court therefore denies this part of Sands' § 2255 motion.

### F.     Deficient Post-Trial Motion

Last, Sands asserts that his trial counsel filed a deficient post-trial motion by making only weak and meaningless arguments. Specifically, on March 27, 2014, counsel filed a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, and in the alternative, moved for a new trial under Rule 33. As the Court noted in denying Sands' post-trial motion, although some of counsel's arguments were developed with argument and analysis, a handful of arguments were perfunctory and undeveloped. Nevertheless, despite the fact that some of counsel's arguments were underdeveloped, the Court addressed all of counsel's arguments except for a few one-sentence, unsubstantiated claims. (R. 92, 6/18/14 Mem. Op. & Order, at 4-13.)

In support of his § 2255 motion, Sands has failed to sufficiently explain how counsel's conduct prejudiced him based on the few arguments the Court did not address – especially in light of the deference courts give to jury determinations on evidentiary matters. *See United States v. Weimert,* 819 F.3d 351, 354 (7th Cir. 2016); *see also United States v. Hagler,* 700 F.3d 1091, 1101 (7th Cir. 2012) ("Federal Rule of Criminal Procedure 33(a) gives district courts the discretion to grant a new trial "if the interest of justice so requires," which is "reserved for only the most extreme cases."). Instead, Sands focuses on what he perceives is the theory of his case, namely, that "the entire case hinged on information alleged[ly] relayed to Officer Williams from an alleged unknown, non-testifying confidential informant saying, petitioner was selling narcotics." (R. 13, Reply Brief, at 34.) After presiding over the numerous hearings in this matter, including the suppression hearing, and the 2014 jury trial, Sands' perception of his case falls flat in the context of the overwhelming evidence of his guilt. *See Strickland,* 466 U.S. at 696 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Therefore, Court denies Sands' § 2255 motion in this respect.

On a final note, for the first time in his reply brief, Sands attacks the Seventh Circuit's legal and factual conclusions underlying the probable cause for his February 3, 2012 arrest in support of his claim that trial counsel was constitutionally ineffective. *See Sands,* 815 F.3d at 1061-63. Sands, for example, argues that the confidential informant's tip was the sole basis of probable cause for his arrest – an argument belied by the evidence in this matter. He also takes issue with the Seventh Circuit's reliance on the collective knowledge doctrine. These arguments, however, do not support Sands' claim that his trial counsel rendered constitutionally

ineffective assistance of counsel, and in any event, are waived, as are all of his claims made for the first time in his reply brief. *See United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014).

## II. Ineffective Assistance of Appellate Counsel Claims

Examining his pro se filings liberally, Sands also maintains that his appellate counsel provided ineffective assistance of counsel for failing to raise the issue concerning the destruction of the Toyota Camry and his status as an Armed Career Criminal on appeal. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Makiel v. Butler,* 782 F.3d 882, 897 (7th Cir. 2015). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obviously and clearly stronger than the claims counsel did raise on appeal. *See id.* at 898; *Blake*, 723 F.3d at 888. In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Makiel,* 782 F.3d at 897. To establish the *Strickland* prejudice prong, Sands must show that there is a reasonable probability that the issues appellate counsel did not raise would have changed the outcome of his appeal. *See Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010).

As discussed above, Sands' arguments concerning the destruction of the Toyota Camry and his status as an Armed Career Criminal are without merit. Accordingly, Sands has failed in his burden of establishing that these claims are clearly stronger than the claims his counsel raised on appeal. *See Makiel,* 745 F.3d at 898; *see also Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("[e]xperienced advocates since time beyond memory have

emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). In other words, without a meritorious claim, Sands "cannot possible demonstrate that he was prejudiced by his appellate counsel's failure to argue such a claim." *Ashburn v. Korte,* 761 F.3d 741, 751 (7th Cir. 2014). As such, the Court denies Sands' ineffective assistance of appellate counsel claims.[2]

### III. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Flores-Ramirez v. Foster,* 811 F.3d 861, 865 (7th Cir. 2016). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

As discussed, Petitioner's ineffective assistance of trial and appellate counsel claims have no factual basis and/or are without merit, and thus Petitioner has not demonstrated that reasonable jurists would disagree as to the Court's conclusions regarding these claims.

---

[2] Because the motion, files, and records of this case conclusively show that Sands is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Mitchell v. United States,* 846 F.3d 937, 941 (7th Cir. 2017); 28 U.S.C. § 2255(b).

16

Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** March 17, 2017

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**